UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


OXFORD LENDING GROUP, LLC,

        Plaintiff,

                                  Case No. 2:10-cv-94

     v.                          Judge George C. Smith
                                  Magistrate Judge E. A. Preston Deavers


UNDERWRITERS AT LLOYD'S
LONDON, *et. al.*,

        Defendants.


### OPINION AND ORDER

Plaintiff, Oxford Lending Group, LLC, brings this action against Defendants Underwriters at Lloyd's, London, Stewart Title Guaranty Company, Placer Title Company ("Placer Title"), The Appraisal Works, Williams Appraisal Service, Jacqueline Shelton, Arketha Munir, and Trevor D. Tapscott.[1]  This action arises from an alleged mortgage fraud scam involving a real estate transaction in the State of California.  Plaintiff alleges that Defendants Shelton, Munir, and Tapscott defrauded it into lending money as part of the transaction.  As to Defendant Placer Title, a California based company that was Plaintiff's closing agent for the transaction, Plaintiff alleges breach of contract, breach of fiduciary duty, and negligence.  This matter is before the Court for

---

[1] All Defendants except Placer Title and Jacqueline Shelton were dismissed by a previously filed Order of this Court.  (*See* Doc. 100).  The dismissal of these claims renders as moot currently pending motions relating to these claims (Docs. 10, 35, 53, and 77).  Consequently, these motions are **DENIED** as moot.

consideration of Defendant Placer Title's Motion to Dismiss, or alternatively, to Transfer Venue

(Doc. 76).  Defendant Placer Title asks the Court to dismiss all of Plaintiff's claims against it for

lack of personal jurisdiction, or, in the alternative, to transfer this matter to the United States

District Court for the Northern District of California.  For the reasons that follow, the Court

**GRANTS** Defendant Placer Title's Motion to Transfer Venue.

## I.  BACKGROUND

Plaintiff's allegations against Defendant Placer Title arise from the sale of residential real

estate located in California (the "Shelton transaction").  Plaintiff, a mortgage broker, funded the

purchase of the property by Defendant Shelton via its credit line with Flagstar Bank.  Plaintiff

alleges that it contracted with Placer Title to provide closing and escrow services for it in relation

to the loan that would fund the purchase of the property.  Plaintiff provided to Placer Title the

necessary closing information, documentation, and written instructions.  The instructions included

the total amount due from the buyer, and the total amount due to the seller (Defendant Tapscott),

at closing.  Despite the written instructions, Plaintiff alleges that Placer Title "altered the closing

documents in several material aspects, "including altering the closing documents "to change or

misrepresent the entities paying or receiving funds."  (Comp. ¶¶ 29-30).  Additionally, Placer Title

allegedly permitted someone other than the buyer to pay the down payment (Defendant Munir),

contrary to Placer Title's agreement with Plaintiff.  According to Plaintiff, Placer Title's conduct

allowed Defendants Shelton, Munir, and Tapscott to commit fraud against Plaintiff.  Plaintiff

alleges breach of contract, breach of fiduciary duty, and negligence claims against Placer Title.

In July 2010, Defendant Placer Title filed its motion to dismiss, or alternatively, to transfer

venue.  Placer Title asserts that the Court lacks personal jurisdiction over it and the Court should

therefore dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). In support of its motion, Placer Title has submitted a declaration of Dante Sergent, a Senior Vice President for Placer Title, which indicates the following. Placer Title is a California company with its principal place of business in California. Placer Title has no offices, employees, representatives or agents in the State of Ohio, and it did not directly solicit Plaintiff's business for the transaction at issue. While Placer Title does not directly market to Ohio companies for escrow service, it does, from time to time, serve as an escrow agent for real property transactions within California in which an out of state lender is involved. No agent or representative of Placer Title traveled to Ohio to meet with anyone from Plaintiff regarding the transaction at issue. The only contact between Plaintiff and Placer Title regarding this transaction was by telephone, fax, email, overnight delivery or U.S. mail. The real property that was the subject of the sale is located in California, and the buyer and seller involved in the transaction reside in California. No long-term relationship between Plaintiff and Placer Title was formed. Placer Title submits that, in view of these facts, Plaintiff cannot meet either the Ohio Long-Arm Statute or the Due Process requirements for personal jurisdiction.

## II. STANDARD

When confronted with a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing the existence of jurisdiction." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). When the Court resolves a Rule 12(b)(2) motion based on "written submission and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a

*prima facie* showing that personal jurisdiction exists in order to defeat dismissal.' " *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).  Under such circumstances "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.' " *Id.* (quoting *Theunissen*, 935 F.2d at 1459).

Although Plaintiff's *prima facie* burden is relatively slight, the Court must still find that  " '[P]laintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss.' " *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)).  Thus, "it remains the plaintiff's burden and the complaint must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)).  Consequently, the rules are designed in part to protect potential defendants from a "plaintiff's bald allegation of jurisdictional facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

"In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996) (citations omitted).  In order for personal jurisdiction to be proper, "both the state['s] long-arm statute and constitutional due process requirements" must be met. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).  As the United States Court of Appeals for the Sixth Circuit has noted, "Ohio's long-arm statute is not coterminous with federal

4

constitutional limits." *Estate of Thompson*, 545 F.3d at 361 (citing *Calphalon Corp.*, 228 F.3d at 721).  Thus, for the Court to have personal jurisdiction, it must find that the requirements of both Ohio's long-arm statute and constitutional due process are met.  *Id.*

## III.  PERSONAL JURISDICTION

There are two kinds of personal jurisdiction that can be exercised, general jurisdiction and specific jurisdiction.  *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).  General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state.  *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003).  Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court.  *Id.*

Plaintiff argues that the Court has jurisdiction under Ohio Revised Code § 2307.382, which provides in pertinent part as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

. . .

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

. . .

[or]

(6) Causing tortious injury in this state to any person by an act outside this state

committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Ohio Rev. Code § 2307.382(A).

## IV.  DISCUSSION

Ohio Revised Code § 2307.382(A)(1) does not confer this Court with personal jurisdiction over Placer Title.  According to the Ohio Supreme Court, this statute is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are *transacting any* business in Ohio."  *Kentucky Oaks Mall v. Mitchell Formal Wear*, 53 Ohio St. 73, 75 (1990) (emphasis in original).  The word "transact" in the context of the Ohio Revised Code means: " 'to prosecute negotiations; to carry on business; to have dealings . . . The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion . . . .' "  *Kentucky Oaks Mall Co.*, 559 N.E.2d at 480 (quoting Black's Law Dictionary (5th ed. 1979)).

A court must consider two factors in order to determine whether a non-resident defendant has "transacted business" under Subsection 2307.382(A)(1).  "The first factor is whether the non-resident defendant initiated the business dealing."  *Russian Collections, Ltd. v. Melamid*, No. 2:09-cv-300, 2009 WL 4016493, at *3 (S.D. Ohio Nov. 18, 2009) (Marbley, J.).  That is, the Court must assess whether the non-resident "reached out" to the plaintiff in the forum state to create a business relationship.  *Paglioni & Assoc., Inc. v. Winnercomm, Inc.*, No. 2:06-cv-276, 2007 WL 852055, at *9 (S.D. Ohio Mar. 16, 2007) (Graham, J.).  The second factor is whether the negotiations or discussions took place in Ohio or had provisions affecting Ohio.  *Russian*

6

*Collections, Ltd.*, 2009 WL 4016493, at *3.  "If the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio, provided there is 'some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.' " *Id.* (citing *Shaker Constr. Group, LLC v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008) (Dlott, J.).  In addition to these two factors, the plaintiff still must demonstrate that there is a substantial connection between the defendant and the forum state.  *United Sprint Communications Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994).

Plaintiff alleges that Placer Title acknowledges on its website that it provides products and services throughout the United States, including as an escrow agent for lenders throughout the country, and represents itself as the largest independent title insurance and escrow agency on the West Coast.  Plaintiff also alleges that Placer Title conducts business with other Ohio lenders or individuals and derives revenue on an annual basis from such activities.  Additionally, Christa Juhlman, Plaintiff's Vice President of Capital Markets, states that the Shelton transaction is not the "sole involvement Placer has had with Oxford," as there "has been at least one other transaction where Placer served as the escrow agent."  (Juhlman Decl. ¶ 7).  Plaintiff's assertions, however, do not establish jurisdiction in this Court.

Placer Title's parent company is "Mother Lode Holding Company" (MLHC), and evidence indicates that MLHC provides transaction support services to the nation's real estate industry.  Plaintiff reasons that, because MLHC provides transaction support services beyond California, so does Placer Title.  Placer Title's website indicates that it is licensed in all California counties, and that Placer Title and its affiliates constitute the largest independent title insurance

7

and escrow agencies on the West Coast.  But nothing indicates that Placer Title is licensed to

provide title and escrow services outside of California, or at least beyond the West Coast.  Placer

Title is not licensed as an escrow agent in Ohio, and has no employees or agents in Ohio.  Placer

Title's role in the Shelton transaction was as the escrow agent, and it had no role in the selection

of Plaintiff as the lender.

       The only contact between Plaintiff and Placer Title concerning the Shelton transaction was

by telephone, fax, email, or mail.  "Merely directing communications to an Ohio resident for the

purpose of negotiating an agreement, without more, is insufficient to constitute 'transacting

business' within Ohio."  *Shaker Constr. Group, LLC*, 2008 WL 4346777, *4.  "Rather, there

must additionally be some continuing obligation that connects the non-resident defendant to the

state or some terms of the agreement that affect the state."  *Id.*  Although Placer Title may have

served as the escrow agent in another transaction involving Plaintiff, the transactions were

isolated circumstances and were not part of a continuing or long-term business relationship.

Nothing indicates that Placer Title "reached out" to Plaintiff.  Placer Title communicated to

Plaintiff in Ohio because that is where Plaintiff is located, not because Placer Title was seeking to

"reach out" and transact business in Ohio.  Plaintiff agreed with the buyer and seller's decision to

use Placer Title as the escrow agent for the transaction.  Furthermore, mere monetary injury to a

plaintiff is insufficient to constitute a large effect on a forum state.  *See, e.g.*, *Paglioni Assocs.*,

*supra*; *Calphalon Corp.*, *supra*.

       For these reasons, the Court finds that Placer Title did not transact business in Ohio under

the meaning of Subsection (A)(1) of Ohio's long-arm statute.

       The Court finds that Ohio Revised Code § 2307.382(A)(4) also does not provide a basis

for this Court to exercise personal jurisdiction over Placer Title.  Subsection (A)(4) applies when a defendant causes "tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."  Plaintiff asserts that Placer Title caused tortious injury in Ohio by its actions as the escrow agent in the Shelton transaction.

There is simply no evidence that Placer Title regularly does or solicits business, or engages in any other persistent course of conduct in Ohio, or that Placer Title otherwise derives substantial revenue from goods used or consumed or services rendered in Ohio.  While its parent company may perform transaction support services throughout the United States, it is clear that Placer Title performs title insurance and escrow services for real estate transactions in California.  It is not licensed to perform escrow services in Ohio.  Obviously, real estate transactions can involve out of state buyers, sellers, and/or lenders (as in this case).  Moreover, "substantial revenue" is a flexible term, and this court has considerable latitude in determining what constitutes substantial revenue.  *Hoover Co. v. Robeson Indus. Corp.*, 904 F. Supp. 671, 674 (N.D. Ohio 1995).  However, undisputed evidence indicates that Placer Title derives less than 1% of its total annual revenue from its services to Ohio companies or individuals, and only received $1,066 for escrow services performed in the Shelton transaction.  These amounts, in absolute or relative terms, do not constitute "substantial revenue."  In sum, Plaintiff has not made a *prima facie* showing that Placer Title regularly does or solicits business in Ohio, engages in any other persistent course of conduct in Ohio, or derives substantial revenue from goods used or consumed or services rendered in Ohio.  Therefore, subsection (A)(4) is not applicable in this case.

9

Ohio Revised Code § 2307.382(A)(6) also does not confer this Court with personal jurisdiction over Placer Title.  As this Court has recognized, "subsection (A)(6) applies when an out-of-state defendant, acting directly or through an agent, causes a tortious injury in Ohio by an act committed outside the state, provided that (1) the out-of-state act was committed with the purpose of inflicting an injury and (2) the injury was reasonably expected to occur."  *Coleman v. Parra*, 163 F. Supp.2d 876, 889 (S.D. Ohio 2000) (Rice, J.) (citing *Clark v. Connor*, 82 Ohio St. 3d 309 (1998)).  Here, at least one of these requirements is not satisfied.  Plaintiff alleges that Placer Title breached its contract with Plaintiff, breached its fiduciary duty to Plaintiff, and acted negligently in its role as the escrow agent at the Shelton transaction closing.  Plaintiff alleges that Placer Title's negligent actions as the escrow agent caused Plaintiff financial injury because it enabled other defendants to commit fraud against Plaintiff.  Plaintiff does not allege, however, that Placer Title engaged in any type of fraud or other conduct intended to cause injury.  As such, Plaintiff has not alleged or shown that any of the actions taken by Placer Title were "with the purpose of inflicting an injury."  Because both prongs required under subsection (A)(6) have not been shown, jurisdiction can not be conferred under Ohio Revised Code § 2307.382(A)(6).

Therefore, the Court finds that Plaintiff has not made a *prima facie* showing that this Court has personal jurisdiction over Defendant Placer Title under Ohio's long-arm statute. Because Plaintiff fails to satisfy the Ohio long-arm statute, it is unnecessary for this Court to resolve whether the exercise of personal jurisdiction would satisfy federal due process requirements.  *See Brunner v. Hampson*, 441 F.3d 457, 467 (6th Cir. 2006) (finding that, because the Ohio long-arm statute was not satisfied, the court had "no reason to analyze" whether due process requirements were met); *see also Cooper v. Digital Processing Sys.*, 182 F.R.D. 242, 252

(N.D. Ohio 1998) (Gwin, J.) ("If the Ohio long-arm statute does not provide a basis for the exercise of personal jurisdiction over the nonresident [party], jurisdiction is unavailable even if the exercise of such would not violate due process.").  Accordingly, the Court finds that it lacks personal jurisdiction over Defendant Placer Title.

Even when personal jurisdiction is lacking, a district court has the discretion to transfer a case to a proper forum rather than dismiss it outright.  28 U.S.C. § 1406(a);  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).  Section 1406(a) requires dismissal of "a case laying venue in the wrong division or district," unless the district court finds, "in the interest of justice," that the case should be transferred to the district "in which it could have been brought."  This statute confers broad discretion upon a district court to determine whether dismissal or transfer is appropriate.  *Stanifer v. Brannan*, 564 F.3d 455, 456-57 (6th Cir. 2009).

Here, both Plaintiff and Placer Title request, in the event the Court finds a lack of personal jurisdiction as to Placer Title, transfer of the action to the District Court for the Northern District of California.  Thus, it is undisputed that Plaintiff's claims against Placer Title could have been brought in said district.  This agreement between the parties is in accord with the general venue statute, 28 U.S.C. § 1391(a), which provides in part that a case may be brought in a judicial district where any defendant resides, if all defendants reside in the same State, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.  For the purpose of determining venue, Placer Title "resides" in the Northern District of California, as it maintains offices in that district.  *See* 28 U.S.C. § 1391(c).  Furthermore, this lawsuit arises from conduct related to property located in the Northern District of California.   Therefore, Plaintiff's claims

against Placer Title could have been brought in the Northern District of California.

Finally, the Court notes that Plaintiff's claims against Defendant Jacqueline Shelton remain pending. After finding good cause shown, Magistrate Judge Preston Deavers issued an order authorizing service upon Defendant Shelton by publication in a newspaper of general circulation in Alameda County, California (Doc. 80). Plaintiff has since filed proof of publication as to this Defendant, whose last known address was in Oakland, California (Doc. 92). Despite service by publication, Defendant Shelton has not appeared in this action. Additionally, Plaintiff has not taken any further action against her. Plaintiff alleges that Defendant Shelton committed fraud in connection with her purchase of the real estate located in Alameda County, California, which is geographically within the Northern District of California. Because the Court finds it appropriate to transfer Plaintiff's claims against the only remaining defendant which has entered an appearance (Defendant Placer Title), and because Plaintiff's still pending claims against Defendant Shelton could have been brought in the Northern District of California, the Court resolves that these claims should remain together. In the interest of justice, as well as judicial economy, Plaintiff's still pending claims against Defendant Shelton will be transferred with the claims against Defendant Placer Title.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not satisfied its burden to establish this Court's personal jurisdiction over Defendant Placer Title. A lack of jurisdiction generally requires the dismissal of an action. But, in this case, the interest of justice necessitates the transfer of this matter to a district court in which it could have been brought. Accordingly, Defendant Placer Title's alternative motion to transfer (Doc. 76) is **GRANTED**, and this case is

**TRANSFERRED** to the United States District Court for the Northern District of California

pursuant to 28 U.S.C. § 1406(a).

The Clerk shall remove Document 76 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**


/s/ George C. Smith_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**

13